IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**ROBIN D. BROCCUTO,**

**Plaintiff,**

v.                                             **Civil No. 3:07cv782.**

**EXPERIAN INFORMATION SOLUTIONS, INC. et al.,**

**Defendants**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT LANE BRYANT, INC.'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

COMES NOW the Plaintiff, ROBIN D. BROCCUTO, by counsel, and for her Memorandum in Opposition to the Motion to Dismiss filed by Defendant Lane Bryant, Inc., she states as follows:

### *OVERVIEW*

World Financial Network National Bank ("WFNNB") is the corrected nomer for Defendant Lane Bryant, Inc., the party now prosecuting the present Motion to Dismiss. WFNNB is a credit card company that facilitated and then refused to correct the identity theft and destruction of the credit of the Plaintiff, Ms. Brucutto. She has brought this action under one statute – the Fair Credit Reporting Act (FCRA), specifically 15 U.S.C. §1681s-2(b). This section provides a focused and specific remedy requiring a furnisher of credit information to credit

bureaus to conduct a reasonable investigation of a consumer's non-frivolous dispute whenever she makes one.   In this case, Defendant points out that the Plaintiff made at least seven disputes to Lane Bryant after her identity was stolen and before she was forced to the extreme measure of filing a federal lawsuit.   In Defendant's view, because it violated the FCRA in response to the first of these disputes, it is forever excused and relieved from conducting any further investigations or even reviewing and acting upon the later and even more developed disputes throughout the last several years.   This is absolutely not the law and ignores the most relevant and critical statement of same – the actual plain language of the statutory text.

Because Defendant's position is not supported by the statute, the case law or even basic common sense, the motion should be denied.**1**

### *THE FACTS IN THE COMPLAINT*

The facts alleged in the Complaint are simple.   The paragraphs of the Complaint relevant to the claim against WFNNB's Lane Bryant account, removing

---

1 Defendant has alleged facts in addition to those contained in the Complaint and certainly the Court is permitted to consider these and convert the present motion to one under Fed. R. Civ. P. 56.  However, Defendant's motion would then have failed to comply with Local Rule 56 as it does not contain a delineated and separate statement of undisputed material facts.   To the extent the Court viewed Defendant's motion as a Rule 56 motion and was inclined to grant same, as unlikely as this may be, Plaintiff asks the Court for leave under Fed. R. Civ. P. 56(f) to conduct necessary discovery and to supplement her response after Defendant's service of a statement of undisputed material facts.

the text of the Complaint are as follows (pertaining to Defendant's other than

WFNNB for Lane Bryant):

18.   Prior to, on or about and after April, 2006 Plaintiff obtained a copy of her credit reports with Equifax, Experian and Trans Union and learned that each were reporting several credit accounts for which Plaintiff was not responsible.

19.   On or about April 28, 2006 Plaintiff disputed the inaccurate information concerning a Lane Bryant account with Experian.   She advised the Defendant that she was not the person that conducted certain transactions regarding the account and in addition, advised that she had filed a criminal complaint against the perpetrator that conducted the transactions. (the "Lane Bryant Reporting").

20.   The Lane Bryant Reporting was false.   The Plaintiff never signed the application for credit and was never legally responsible for same.

21.   On May 22, 2006 Experian responded to Plaintiff's April 28, 2006 dispute by acknowledging notice of same and by stating that Experian had added an "Extended Fraud Victim Alert" to Plaintiff's credit report, however, failed to delete the inaccurate information regarding the account from the Plaintiff's credit file.   On March 24, 2007, Plaintiff again received a copy of her credit report from Experian.   Within the March 24, 2007 report, Experian reported the Lane Bryant account with a status of "charge off/past due".

22.   On or about April 28, 2006, the Plaintiff wrote to Equifax and disputed inaccurate information concerning an account with Lane Bryant, an account with Structure and an account with Limited Express.   She advised the Defendant that she was not the person that conducted certain transactions

regarding the accounts and in addition, advised that she had filed a criminal complaint against the perpetrator that conducted the transactions.

24.   On June 15, 2006 Equifax responded to Plaintiff's April 28, 2006 dispute by acknowledging notice of same and by stating that Equifax had confirmed that the accounts were verified as being reported correctly and remain.

25.   On or about April 28, 2006, the Plaintiff wrote to Trans Union and disputed inaccurate information concerning an account with […] Lane Bryant[.]   She advised the Defendant that she was not the person that conducted certain transactions regarding the accounts and in addition, advised that she had filed a criminal complaint against the perpetrator that conducted the transactions.  (the "Reportings")

26.   The Reportings were false.   The Plaintiff never signed the any of the respective applications for credit and was never legally responsible for same.

27.   On May 9, 2006, Trans Union responded to Plaintiff's April 28, 2006 dispute by acknowledging notice of same and by stating that Trans Union had confirmed that the accounts were verified and remain.

28.   On April 18, 2007, Plaintiff again received a copy of her credit report from Trans Union.  Within the April 18, 2007 report, Trans Union continued to report disputed accounts within Plaintiff's credit file showing a status of "charge off".

29.   In addition to the disputes alleged in detail herein, the Plaintiff made multiple additional disputes to Trans Union, Equifax and Experian regarding these alleged credit accounts and others, all because they did not belong to her and/or were the result of identity theft.

30.  Defendants each received, but ignored the Plaintiff's dispute letters and did refuse to delete the inaccurate information regarding the accounts from the Plaintiff's credit file.

31.   Defendants each had actual knowledge of these inaccuracies and deliberately chose to ignore and permit same.

33.   Upon information and belief, Plaintiff alleges that on one or more occasions Equifax, Experian and Trans Union each forwarded Plaintiff's disputes to […] Lane Bryant[.]  Upon information and belief, […] Lane Bryant [… was] provided notice of Plaintiff's disputes and despite this notice, […] failed and refused to investigate and correct its inaccurate reporting.

65.  On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, Lane Bryant […] violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(1)(A) by failing to fully and properly investigate the Plaintiff's disputes[…].

70.  On one or more occasions within the two years prior to the filing of this suite, by example only and without limitation, Lane Bryant […] violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

75.  On one or more occasions within the two years prior to the filing of this suite, by example only and without limitation, Lane Bryant […] each violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2b(1)(C) and (D) by publishing the Lane Bryant […] representations within Plaintiff's credit file with Equifax, Experian and Trans Union without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to each other credit reporting agency.

From the plain facts of the Complaint, but as well the allegations added by Defendant in its motion, the Court also knows, unremarkably for the present motion: (a.) an identity thief opened an account with WFNNB; (b.) the Plaintiff first learned about the identity theft more than two years before the Complaint was filed; (c.) the Plaintiff first tried to get the inaccurate account off her credit file by contacting WFNNB directly in November 2003 (Defendant's Affidavit of Andrea K. Dent, "Dent Affidavit", Defendant's Exhibit "A", ¶5); (d.) when defendant would not correct its reporting in response to the Plaintiff's direct disputes  made multiple disputes through the consumer reporting agencies; and (e.) at least some of these disputes were made within the two years preceding the filing of the Complaint.

## *ARGUMENT*

### I.  BECAUSE THE COMPLAINT PROPERLY ALLEGES A CAUSE OF ACTION UNDER THE FCRA WITHIN TWO YEARS BEFORE THE FILING OF THE COMPLAINT, DEFENDANT'S MOTION SHOULD BE DENIED.

#### A.  Plaintiff has alleged and Defendant concedes that the Complaint properly pleads a violation of FCRA Section 1681s-2(b) on May 19, 2006.

WFNNB ignores the substance and legal basis for Plaintiff's actual claim. Either it has not read the relevant statutory section or it deliberately attempts to

6

mislead the Court.  The violation in this case is not alleged to be the publication of inaccurate information.   Rather, it is the failure to investigate specific disputes made on specific dates.

In Counts Seven, Eight and Nine, Ms. Broccuto alleges that "Lane Bryant […] violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(1)(A) by failing to fully and properly investigate the Plaintiff's disputes[…]", Complaint ¶65, "violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(1)(B) by failing to review all relevant information provided by the consumer reporting agencies", Complaint ¶70, and "violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2b(1)(C) and (D) by publishing the Lane Bryant […] representations within Plaintiff's credit file with Equifax, Experian and Trans Union without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to each other credit reporting agency." Complaint ¶75.  All of these causes arise under the same FCRA section, 15 U.S.C. §1681s-2(b).

The Court has previously considered and correctly detailed the distinctions between different provisions within the FCRA, and even within §1681s-2 itself. Ayers v. Equifax Information Services, Civ. No. 3:03CV551, 2003 WL 23142201 (E.D.Va. 2003).  The Court explained, "The FCRA places various requirements on

consumer credit reporting agencies, furnishers of credit information to consumer credit reporting agencies, and users of consumer credit reports." <u>Id</u>. at \*2.  In the present case, as in <u>Ayers</u>, the relevant section is 15 U.S.C. §1681s-2(b).  "Section 1681s-2(b) of the act imposes a duty on a furnisher of information to conduct an investigation with respect to any disputes and report the results of that investigation to the consumer reporting agency." <u>Id</u>. at \*3.

Defendant's statute of limitations defense ignores the substance and elements of a §1681s-2(b) claim.  It is not the publication of an inaccurate account or tradeline that triggers the statute to run or establishes a cause of action.  To the contrary, there is not even a private cause of action available for a creditor's furnishing of inaccurate information.  ("Subsection (a) [of §1681s-2] imposes duties upon furnishers of credit information to provide consumer reporting agencies with accurate information. Subsections (c) and (d), limit the remedies available for violations of subsection (a). In particular, subsection (c) eliminates the availability of direct remedies to consumers by making Sections 1681n and 1681o inapplicable to violations of subsection (a)." <u>Id</u>. at \*2.)  In its opposition, Defendant points out that the Plaintiff first disputed Defendant's the identity theft account directly to the creditor.  ("In actuality, on November 20, 2003, Plaintiff contacted WFNNB to report fraudulent activity with respect to the Lane Bryant Credit Card Account."

Def. Mem. p.6). These direct contacts, governed by §1681s-2(a), do not satisfy the statutory investigation scheme subject to a private cause of action.

In this case, and in addition to other contacts with the creditor or disputes made prior to the period within the statute of limitations, both parties agree that the Plaintiff made at least one dispute through the consumer reporting agencies within the two years preceding the filing of the Complaint that would be governed by §1681s-2(b).  The Complaint alleges that on April 28, 2006, the Plaintiff made a dispute and request for investigation of the subject account to the consumer reporting agencies.  Complaint ¶¶19, 22.  Defendant concedes that it received such disputes through the CRAs on May 19, 2006.  Def. Mem. p.6; Dent Affidavit, ¶ 9.  The Plaintiff alleges that upon receipt of such dispute the Defendant failed to perform the functions and obligations imposed at §1681s-2(b).  Complaint ¶¶65, 70, 75.    Defendant thereafter concedes its failure to correct the subject inaccuracies.  ("WFNNB verified/confirmed the Lane Bryant Credit Card Account to the Agencies in response to additional notices of disputes on […] May 19, 2006." Def. Mem. p.6.)   There is thus no dispute that the Plaintiff has alleged and indeed even has established a violation of 15 U.S.C. §1681s-2(b).

## B. Each violation of the FCRA is independent of any other violation.

Despite Plaintiff's satisfaction of each element of §1681s-2(b) necessary to establish a FCRA violation in May 2006, WFNNB nonetheless argues that earlier disputes made by the Plaintiff outside the two year limitations window should bar Plaintiff's claims based entirely upon subsequent violations of the statute. Such a conclusion is not supported either by the plain text of the FCRA or by its interpreting case law.

As Defendant points out, the FCRA's period of limitations relevant to this case is two years from discovery. 15 U.S.C. § 1681p(1). However, this two year period runs from "the violation that is the basis for such liability[.]" Id. (Emphasis added). WFNNB's argument thus makes no sense. Defendant seems to contend that a party may "accumulate" only a single FCRA violation - once that has occurred, it is forever immune from liability for subsequent violations. But the fact that the Defendant received earlier disputes from the Plaintiff, which it also ignored, does not excuse its later similar violations. To the contrary, in the best FCRA cases the consumer will have provided the creditor or CRA multiple opportunities to correct its inaccurate reporting, with each subsequent dispute providing greater and more detailed information for the entity to consider and investigate. In fact, it is likely that a consumer that makes only a single dispute would present a case much less likely to meet the "willfulness" threshold required

10

for recovery of punitive damages.  15 U.S.C. §1681n.  See e.g. <u>Dalton v. Capital Associated Industries, Inc</u>. 257 F.3d 409, 418 (4th Cir. 2001)(Defendant corrected inaccuracy one day after dispute.  Summary judgment for negligence denied, but for willfulness granted).  The system should not work such that a consumer makes a single dispute and then rushes to the courthouse.  Congress designed the FCRA to support and sanction the dispute process as a means to obtain relief without having to file a federal case.  Defendant's novel interpretation would run directly against the grain of such ambition.

As offered above, Defendant's argument confuses the statutory text at §1681p in two ways.  First, it would substitute the word "inaccuracy" for the statute's word "violation."  Thus, defendant argues that what Congress really meant was not "2 years after the date of discovery by the plaintiff of the <u>violation</u> that is the basis for such liability", but instead "2 years after the date of discovery by the plaintiff of the <u>inaccuracy</u> that is the basis for such liability."   As this Court has cautioned previously in its FCRA interpretation:

> The touchstone of statutory interpretation is legislative intent as expressed in the statute's words. Thus, the well-settled starting point in the interpretive inquiry is the language of the statute itself. See <u>United States v. Ron Pair Enterprises, Inc</u>., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Where a statute's language is unambiguous, a court's task of statutory construction ends unless enforcement of statutory language would

contravene clearly expressed legislative intent. See <u>In re Forfeiture Hearings as to Caplin & Drysdale, Chartered</u>, 837 F.2d 637, 641 (4th Cir.1988).

<u>Ayers</u>, 2003 WL 23142201, *4.

Each dispute and failure to comply with the FCRA's investigation requirement will itself be the basis for a separate FCRA violation. Defendant's position to the contrary is not only inconsistent with the statutory text, but as well with nearly every court decision applying such text. Most recently and directly on point, the Southern District of Illinois explained the underlying reasoning for such decisions:

> Likewise, when different forms of unlawful conduct occur over the course of several years, and the putative plaintiff thereafter files suit, it is possible that some statutory bases of her recovery may be time-barred while she may yet proceed with other claims arising from the defendant's more recent violations. A contrary ruling would allow an actor to commit minor infractions in violation of federal law, wait for the applicable statute of limitations to pass, and thereafter escalate both the breadth and depth of its illegal conduct with impunity, violating new provisions within the statute and ramping up the intensity of its earlier violations.

<u>Pletz v. MBNA America, NA</u>, 2007 WL 518756, *3 (S.D.Ill 2007). *See also e.g.* <u>Thomas v. U.S. Bank, N.A.</u>, 2007 WL 764312, *5 (D.Or. 2007)("The bank's first argument on this point is that the Thomases' claim is untimely. Section 1681p of the FCRA requires the plaintiff to bring an action to enforce "any liability created under this subchapter" within "two years after the date of discovery by the plaintiff

12

of the violation that is the basis for such liability."The bank argues that because the Thomases knew it was erroneously reporting the Visa account as involved in a Chapter 7 bankruptcy as far back as March 2002, the statute of limitations for raising this issue expired before the bank even received the ACDVs at issue here. This is in error. The Thomases' suit is necessarily based on the bank's investigation of the ACDVs, and not simply on its reporting of false information. Nelson, 282 F.3d at 1059-60."); Jaramillo v. Experian Information Solutions, Inc., 155 F.Supp.2d 356, 359 (E.D.Pa. 2001) (In a §1681s-2(b) case, each FCRA violation "is a separate and distinct tort to which a separate statute of limitations applies. The failure of the consumer to mitigate his damages by filing suit when he is first injured, thus permitting a more widespread circulation of the credit information, should have a "bearing [only] on the [calculation of] damages." Citing Hyde v. Hibernia, 861 F.2d 446 (5th Cir.1988).)

## II. THE COMPLAINT SUFFICIENTLY ALLEGES A VIOLATION OF 15 U.S.C. § 1681s-2(b)(1)(C) & (D).

In addition to its general statute of limitations challenge, WFNNB also asserts that the Complaint inadequately pleads a violation of subsections (C) & (D) of §1681s-2(b)(1). In doing so, it ignores the notice pleading ambitions of Fed. R. Civ. P. 8.

13

Contrary to Defendant's assertions that "Nowhere in the Complaint has Plaintiff alleged that WFNNB (1) failed to report the results of its investigation to Experian or any other credit reporting agency or (2) that the investigation conducted by WFNNB found that the information disputed was incomplete or inaccurate", the Complaint alleges just these elements in paragraphs 30, 31 and 33 and restates same in the allegations in Counts Seven, Eight and Nine.

Regardless, Rule 8 requires nothing close to the level of detail demanded by WFNNB.  As the Seventh Circuit recently explained in rejecting similarly petty demands from a credit furnisher Defendant in a §1681s-2(b) case:

> In general when a plaintiff brings a claim in federal court, he need only provide enough "detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests,' " and, through his allegations show that it is plausible, rather than merely speculative, that he is entitled to relief. EEOC v. Concentra Health Care Servs., Inc., 496 F.3d 773, 776-77 (7th Cir.2007) (quoting Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (further citations omitted)). Even after the Supreme Court's recent Bell Atlantic case, complaints in federal courts need only satisfy a notice pleading standard. Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663, 667-68 (7th Cir.2007) (citing Erickson v. Pardus, --- U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)). We have distinguished notice pleading from evidentiary proof by stressing that "[f]acts that substantiate the claim ultimately must be put into evidence, but the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset.' " Vincent v. City Colleges of Chicago, 485 F.3d 919, 923-924 (7th Cir.2007). Further, we have admonished that "[a]ny

> district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain ...' should stop and think: What rule of law requires a complaint to contain that allegation?" <u>Doe v. Smith</u>, 429 F.3d 706, 708 (7th Cir.2005) (emphasis in original).

<u>Lang v. TCF Nat. Bank</u>, 249 Fed.Appx. 464, 466, 2007 WL 2752360 (7th Cir. 2007).   Addressing the creditor's demands that every element of §1681s-2(b) be specifically pled, the Court explained:

> <u>Bell Atlantic</u>, for its part, requires only that the complaint provide "fair notice" of a plaintiff's claims and that recovery be "plausible." 127 S.Ct. at 1964. Lang's allegations meet those requirements. He asserts that he told ChexSystems (a CRA) that TCF furnished false information, that TCF refused to investigate or correct the false report even after learning of the asserted error, and that it thereby violated the FCRA. Even TCF does not argue that these allegations did not provide it with fair notice of Lang's claim or that, when the allegations are assumed to be true, recovery is implausible.

<u>Id</u>.

Finally, as the Seventh Circuit noted in <u>Lang</u>, it is unreasonable for a defendant or the Court to insist that every detail of a §1681s-2(b) violation be pled in the initial Complaint as much of the information that would have to be pled initially remains only in the hands of the Defendant.  <u>Id</u>.  For example, how could the Plaintiff possibly allege the details of what WFNNB did internally to investigate the Plaintiff's disputes or what those investigation results were prior to discovery?   Certainly the Plaintiff will discover a great deal of testimony,

documents and other evidence as the case proceeds.   She will as always supplement her own Rule 26(a)(1) disclosures and her discovery responses.   But presently, WFNNB has ample notice of the alleged violation.   Its Motion to Dismiss should be denied.

If the Court were inclined to grant Defendant's motion on either basis, Plaintiff asks leave to amend and leave to conduct appropriate discovery pursuant to Fed. R. Civ. P. 56(f).

ROBIN D. BROCCUTO,

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION
ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of March, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John Becker Mumford, Jr.
Hancock Daniel Johnson & Nagle PC
4701 Cox Rd
PO Box 72050
Richmond, VA 23255-2050
Email: jmumford@hdjn.com

Travis Aaron Sabalewski, Esq.
Adela Bashir Parvaiz, Esq.
Stacy Leann Haney, Esq.
Reed Smith LLP
901 E Byrd St
Suite 1700
Richmond, VA 23219-4069
Email: tsabalewski@reedsmith.com

Bruce Steven Luckman, Esq.
Kogan Trichon & Wertheimer PC
1818 Market Street
30th Fl
Philadelphia, PA 19103
Email: bluckman@mstkw.com

Mark Gregory Carlton, Esq.
Harman Claytor Corrigan & Wellman
4951 Lake Brook Dr
Suite 100
Glen Allen, VA 23060-9272
Email: mcarlton@hccw.com

17

David Neal Anthony, Esq.
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23218-1122
Email: david.anthony@troutmansanders.com

                              _____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION
ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net